UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: WHITNEY LEI BOWIE<br>  *DEBTOR*<br><br>2404,<br>  *PLAINTIFF*<br>V.<br><br>MONEY KEY – TX, INC AND CV CAPITAL MARKETING LLC DBA GREAT EASTERN RESOLUTIONS<br>  *DEFENDANTS* | CASE NO: 4:24-33256<br><br>CHAPTER 13<br><br>ADVERSARY PROCEEDING NO:<br><br>NO. _____ |

COMPLAINT

1. Plaintiff Whitney Bowes files this complaint seeking damages arising from defendants' willful violation of the automatic stay in accordance with 11 U.S.C. §362(k).

    A.    INTRODUCTION

2. This is an action for actual and punitive damages, including attorney's fees, filed by the plaintiff for the failure of the defendant to comply with 11 U.S.C. §362.

3. In addition, or in the alternative, this action is filed for actual and statutory damages, including attorney's fees, filed by the plaintiff for the failure of the defendant to comply with the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq.

4. This action is also filed to prevent the frustration of the underlying purposes of the United States Bankruptcy Code. To date, debtor's counsel has been unable to communicate with either defendant in order to ensure that the threats and extortion do not repeat.

### B. JURISDICTION AND STANDING

5. This adversary proceeding relates to the Chapter 13 case of Plaintiff, *In re Whitney Lei Bowie*, Case Number 24-33256, filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

6. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §1334 and § 157(b) and (c).

7. To the extent the Court may find this to be a non-core proceeding, the plaintiff consents to the entry of a final order in this matter by the Bankruptcy Court, in accordance with 28 U.S.C. § 157(c)(2).

8. This Court has supplemental jurisdiction to hear all state law and FDCPA claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claim occurred in this district. Defendants regularly transact business in this district.

10. Plaintiff has standing to bring this action as she was damaged economically and suffered damages to her person as a result of the defendants' willful violation of the automatic stay.

### C. PARTIES

11. Plaintiff is the debtor in the above-captioned bankruptcy case, filed

under Chapter 13 of the United States Bankruptcy Code.

12. Upon information and belief, defendant MoneyKey – TX, Inc., is a Credit Access Business licensed by the State of Texas License No. 16641-62815.  They are a foreign corporation with headquarters in Delaware.  They can be served by service upon their registered agent, Corporation Service Company dba CSC-Lawyers, Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas, 78701.

13. Upon information and belief, Defendant Great Eastern Resolutions is a dba of CV Capital Marketing LLC, a limited liability corporation registered in Florida that lists Chistopher Veale of Boca Raton, Florida as manager.  Great Eastern Resolutions can be served by service on their registered Agent, Eduard Kotlyarov, Jr. Esq., 433 Plaza Real, Suite 375, Boca Raton, Florida 33432.

14. This Court has jurisdiction because an action to enforce liability under the FDCPA may be brought in any court of competent jurisdiction. 15 U.S.C. § 1692k(d).

D. RELEVANT FACTS

*Ford Motor Credit sued Atanacio Valdez and both parties were represented by counsel in the matter*

15. At some point in 2020 or 2021, Whitney Lei Bowie took out a small dollar loan from Defendant MoneyKey-TX, Inc.  Unfortunately, she could not make all the payments on the loan.

16. Ms. Bowie received calls from Great Eastern Resolutions, the dba of CV Capital Marketing LLC.  They were collecting on the MoneyKey loan.  Ms. Bowie made a payment plan and provided her bank account information so that payments could be autodrafted from her bank

account.

17. On July 17, 2024, Whitney Lei Bowie filed a Chapter 13 bankruptcy petition, schedules, statement of affairs and supporting documents, seeking the protection and assistance of the bankruptcy court. Defendant MoneyKey -TX, Inc. was listed on Schedule E/F at their headquarters address, 1000 N. West Street, Suite 1200, Wilmington, Delaware, 19801.

18. Ms. Bowie had an automatic payment of $133.33 to Great Eastern scheduled for July 19, 2024.  On July 18, she received a voicemail from the collector at Great Eastern, reminding other of the payment due and providing a phone number she could contact with any questions in regards to her payment.

19. Realizing they had not yet learned of her bankruptcy filing but assuming they would soon, Ms. Bowie changed her bank account information so the payment would not accidentally be put through.

20. On July 19, 2024, Ms. Bowie had another voicemail from Great Eastern. This one was transcribed on her voicemail as follows: "Hi Whitney, I just received a missed call from you here at the legal firm handling your case 124865.  It looks like the payment of the 133 didn't go through.  Give me a call back if this still something is resolved voluntarily at #### OK sweetheart my extension is ###."

21. Ms. Bowie had called Great Eastern and she called them back.  She felt secure in calling, as she knew she had filed bankruptcy and was not obligated to make this payment.  She wanted to provide the collection employee with her attorney's contact information and the case number for her bankruptcy so they would stop contacting her about the payment plan.  However, that is not how the call went.

22. The Great Eastern employee told Ms. Bowie that <u>she could see from the notes that Ms. Bowie had filed bankruptcy</u>, but unfortunately the debt with MoneyKey is not dischargeable, that she had signed that away in the original contract with MoneyKey.  Ms. Bowie tried to protest and said she did not understand.  She tried to give the case number and contact information for her lawyer.  However, the Great Eastern employee said no, it did not matter, they would now proceed to garnish wages.

23. Ms. Bowie is the sole provider for her family and hearing that her wages would be garnished caused visions of homelessness to spin in her head.  Completely frazzled and with the collection employee pushing the garnishment issue again, purposely upping Ms. Bowie's panic, Ms. Bowie relented and made the payment for MoneyKey.

24. After the call, Ms. Bowie felt frustrated and in severe emotional distress.  What was the point of filing the bankruptcy if she could have her wages garnished?  Why didn't her attorneys warn her that the debt may not be dischargable?  She started to wonder what was right after all.  Should she have just sent some of her scarce money to MoneyKey when she had her first payment on her Chapter 13 plan coming due?  But she did not want her wages garnished as she would then be unable to pay the rent!  Her mental anguish at her financial situation was now noticeably higher than before she had filed the bankruptcy.

25. Ms. Bowie did file a dispute with her bank but because she had agreed to send the money, even though it was under duress, the bank said there was nothing they could do.

26. The transaction went through as $133.33 to Great Eastern Resolution with a phone number appearing on the transaction report with Ms. Bowie's bank account – 888-263-2318.

27. Ms. Bowie then contacted her attorney's office where she learned that the MoneyKey loan was a simple, unsecured debt that should not get priority over any other unsecured creditor – and furthermore, that the threats to garnish were lies.  Wages cannot be garnished in Texas and even in the limited circumstances when they can, it is only after a judgment is received in a lawsuit.

28. Despite knowing that Ms. Bowie had filed bankruptcy and was protected by the automatic stay, Defendants purposely continued their collection efforts in order to extort payment from her with their threats and lies.

29. Great Eastern does not have a debt collection bond and is not licensed with the state of Texas as is required by state law.  Furthermore, CV Capital Marketing, LLC is also not licensed in Texas as a debt collector nor does it have registration with the state Tax Assessor or the Secretary of State.

30. MoneyKey-TX, Inc. hired an unlicensed debt collector with no bond to collect its debts.  The collectors they hired, Great Eastern, proceeded to violate the laws governing the automatic stay in bankruptcy, the FDCPA, and the laws of common decency.

31. On or about August 29, 2024, Ms. Bowie was again assaulted by a barrage of calls from MoneyKey.  The first call that she answered, a collector from MoneyKey told her that he was in her neighborhood, ready to serve her with a lawsuit.  This was not a polite call about an address from a normal process server; rather, it was a malicious threat.

32. Ms. Bowie was home alone, about to pick up her children from school and despite having previously been told by her attorney's office that the callers were likely lying, she was still afraid.  A single mother alone with a man threatening that he would come to her home cannot help

but lay awake at night, wondering what she should do. Should she call the police? What would make this stop?

33. The calls continued. On or about August 30, she had to put her phone on Do-Not-Disturb. Not to be defeated, the collectors left voicemails. read "This message is for Whitney Bowie. It seems we have exhausted all resources to try and reach you in regard to a collection matter in our office. There were several attempts by the creditor for you to respond and handle the situation. This has been our attempt to get your attention on this account before it is deemed a delivered attempt to have a issue. Contact Karen Miller if you wish to gather more information to handle this account…..###-###-####".

34. Ms. Bowie figured out a way to contact MoneyKey directly, and she called them. However, MoneyKey was not helpful. They said it was out of their hands and offered her no solutions. At best, MoneyKey had sold Ms. Bowie's personal information to this unlicensed predator. At worst, they had hired them to collect. Either way, they refused to even provide contact information to Ms. Bowie.

35. As a proximate result of the foregoing acts and omissions of the Defendant, Plaintiff has suffered actual damages and injury, including but not limited to stress, humiliation, mental anguish and suffering, and emotional distress, for which Plaintiff should be compensated in an amount to be proven at trial. Plaintiff thought that once she hired a lawyer and filed bankruptcy, then the collection issues would stop and she could make payments to the trustee under an organized plan. Instead, she faced threats, panic and uncertainty as a direct result of Defendants' actions.

36. Ms. Bowie's counsel attempted to make contact with Great Eastern Resolution to seek a return of the funds. However, calls to both the number provided to Ms. Bowie and the number appearing on her bank

account as belonging to Great Eastern Resolution were not productive.

*Defendant MoneyKey-TX, Inc. is liable for the actions of their debt collectors under the doctrine of Respondeat Superior*

37. The acts and omissions of Defendant Great Eastern Resolutions, and the other debt collectors employed as agents by Defendant who communicated with Plaintiff as further described herein, were committed within the time and space limits and within the sphere of their respective work done within their agency relationships with their principal, the Defendant MoneyKey-TX, Inc.

38. The acts by Defendant debt collectors and their employees were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

39. By committing these acts against Plaintiff, these agents of Defendant debt collector were motivated to benefit their principal, the Defendant MoneyKey-TX, LLC.

40. Defendant Moneykey is therefore liable to Plaintiff through the Doctrine of Respondeat Superior and the doctrine of principal-agency relationships for the intentional acts, errors, and omissions done in violation of state and federal law by his collection employees.

   E.   WILLFUL VIOLATION OF THE AUTOMATIC STAY – 11 U.S.C. §362(K).
   *AGAINST BOTH DEFENDANTS*

41. Plaintiff incorporates the preceding paragraphs.

42. "When a bankruptcy petition is filed, an automatic stay operates as a self-executing injunction." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-355 (5th Cir. 2008). The automatic stay protects the

debtor from further collection actions for debts that arose prior to the filing. 11 U.S.C § 362.

43. "One of the most fundamental bankruptcy protections afforded to debtors and creditors alike is the automatic stay. Without it, the bankruptcy process would be thrown into disarray, with creditors racing to pursue their own remedies against the debtor's property." *Garza v. CMM Enters., LLC (In re Garza)*, 605 B.R. 817 (Bankr. S.D. Tex. 2019).

44. Should that stay be violated, 11 U.S.C § 362(k) provides a private right of action to the debtor:

> (A)n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

45. For Plaintiff to succeed on her claims, she has the burden to establish, by a preponderance of the evidence, three elements. First, that Defendants knew of the existence of the stay; second, that Defendants' actions were willful; and third, that Defendants' actions violated the automatic stay. *Gates v. RAC Acceptance Tex., LLC (In re Gates)*, 621 B.R. 129, 136 (Bankr. W.D. Tex. 2020).

46. Here, when Ms. Bowie contacted the Defendant collection agency hired by MoneyKey-TX, Inc., she was informed that the collector could see in "her file" that Ms. Bowie had filed bankruptcy. Furthermore, Ms. Bowie was trying to provide contact information of her lawyer so that any doubt could be resolved, but the collector instead falsely insisted that the MoneyKey-TX contract stated the loan was not dischargeable in bankruptcy. So not only was MoneyKey listed as a

creditor, but the collector discussed the bankruptcy with Ms. Bowie.

47. Second, the Fifth circuit has held that "a willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." *In re Chesnut*, 422 F.3d 298 (5th Cir. 2005)  Here, the actions of the Defendant collection agency were intended and these actions of the agent of MoneyKey-TX, Inc. have only been ratified, rather than rejected, by MoneyKey-TX.

48. The third factor is clear – trying to take money from Ms. Bowie's account, the calls to collect, and the conversation with Ms. Bowie which extorted payment from her and the processing of the payment were all violations of the automatic stay, as money was taken from Ms. Bowie to pay MoneyKey, to the detriment both of Ms. Bowie and to the other creditors.

49. Damages for emotional distress may also be recovered as a component of actual damages for a violation of the automatic stay.  The Bankruptcy court in the Eastern District of Texas, Marshall Division, so found, stating " While a court must cautiously examine the proof which is tendered in support of a such a claim, this Court believes that, in shaping a remedy that only permits individuals to recover for damages inflicted by a creditor's violation of the automatic stay, § 362(k) encompasses an individual's right to recover for any emotional distress caused by that violation." *In re Collier*, 410 B.R. 464 (Bankr. E.D. Tex. 2009)

50.  Ms. Bowie's actual damages include both economic and emotional

distress damages as described in the preceding paragraphs.

51. Punitive damages are appropriate in the case of "egregious conduct". *In re: Repine*, 36 F.3d 512, 521 (5th Cir. 2008).

52. Here, refusing to contact her attorney and instead stating that garnishment would be imminent should a payment not be made immediately qualify as egregious conduct.

53. Plaintiff seeks actual damages, punitive damages, and attorney fees and costs for the Defendants' violation of the automatic stay.

F. VIOLATION OF THE TEXAS DEBT COLLECTION ACT – TEXAS FINANCE CODE §392 ET. SEQ.

*AGAINST BOTH DEFENDANTS*

54. Plaintiff incorporates all preceding paragraphs.

55. For Plaintiff to succeed on her TDCA claims, he must satisfy three prerequisite requirements: Plaintiff must be a "consumer", Defendants must be " debt collectors" that sought to collect a "consumer debt" from Plaintiff, as these terms are defined by the TDCA.

56. Section 392.001(1) provides the following definition for "consumer": "Consumer" means an individual who has a consumer debt.

57. Here, Plaintiff is an individual who owed on a personal loan from MoneyKey-TX, Inc. She used the borrowed funds for personal, family and household needs. Ms. Bowie meets the definition of consumer and the debt is a consumer debt.

58. Section 392.001(5) provides the following definition for " debt collection": " 'Debt collection' means an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or

alleged to be due a creditor." And 392.001(6) defines a debt collector as a person who directly or indirectly engages in debt collection.

59. Here, MoneyKey-TX Inc is engaged in collection of consumer debt from Plaintiff, thereby meeting the definition of "debt collector". They do not meet the definition of a "third party debt collector", but that is not necessary for the claims here.

60. CV Capital Marketing LLC dba Great Eastern Resolutions is also engaged in the collection of consumer debt from Plaintiff, thereby meeting the definition of "debt collector". They <u>do</u> meet the definition of a "third party debt collector".

61. Section 392.001(2) provides the following definition for "consumer debt": "Consumer debt" means an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction. The MoneyKey loan meets the definition of consumer debt.

62. All three definitions are met in this case. MoneyKey-Tx and Great Eastern are both debt collectors collecting a consumer debt from Ms. Bowie as defined by the Texas Finance Code.

63. MoneyKey-TX violated Texas Finance Code § 392.306. "A creditor may not use an independent debt collector if the creditor has actual knowledge that the independent debt collector repeatedly or continuously engages in acts or practices that are prohibited by this chapter."

64. Defendant Great Eastern does not have a bond as required by Texas Finance Code §392.101. Every act they take to collect a consumer debt in the state is a violation of the Texas Debt Collection Act as they lack a bond. These are repeated violations.

65. Defendant Great Eastern lacks proper procedures to keep from violating even the simplest of provisions of the Debt Collection Act – to keep a bond.  Furthermore, they continued to use abusive collection tactics, including threats and lies, to extort payment from Ms. Bowie despite their knowledge of the bankruptcy.

66. By hiring and continuing to use Great Eastern as a collection firm, Defendant MoneyKey-TX Inc violated the TDCA.  Furthermore, by accepting the payments which MoneyKey-TX was bringing in, such as the payment Ms. Bowie was forced to make on or around July 20, 2024, MoneyKey-TX ratified the actions of their collectors.

67. Defendant's actions were the proximate cause of actual and economic damages to Plaintiff, including but not limited to the economic hardship from the loss of money due to her extra payment, creating a need for her to skimp on other necessities for her family, and her extreme stress, anxiety and panic leading to sleeplessness, agitation and irritability.

68. While Ms. Bowie had already retained counsel for the Chapter 13 bankruptcy, she has now been forced to incur more reasonable and necessary attorneys' fees on her behalf.  This Court can award Plaintiff her attorneys' fees as against Defendants pursuant to 11 U.S.C. §362k, § 392.403 of the TDCA, the Court's inherent powers, and its § 105(a) powers.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:
    (a) For a repayment of the payment made to Defendants;
    (b) For actual damages, including economic harm and mental anguish;
    (c) For punitive damages for the willful violations of Defendants;

(d) For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action;

(e) For such other or further relief as the Court deems proper.

> Respectfully submitted,
>
> *[signature]*
>
> Amy Beth Clark, TX Bar No. 24043761
> Ciment Law Firm, PLLC
> 221 Bella Katy, Dr.
> Katy, Texas 77494
> Ph: 833-663-3289
> eService: courtfilings@cimentlawfirm.com
> ATTORNEY FOR DEBTOR and PLAINTIFF
> Whitney Lei Bowie